UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 07-123-GWU

ANTHONY BARTLEY,                                                                    PLAINTIFF,

VS.                                   **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                                        DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).  The appeal is currently before the court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity?
      If yes, the claimant is not disabled.  If no, proceed to Step 2.
      See 20 C.F.R. 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical
      or mental impairment(s)?  If yes, proceed to Step 3.  If no, the
      claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any
      impairment(s) significantly limiting the claimant's physical or
      mental ability to do basic work activities?  If yes, proceed to

1

07-123 Bartley

Step 4.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled.  If no, proceed to Step 6.  See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  See 20 C.F.R. 404.1520(e), 416.920(e).

7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.   20 C.F.R. Section 404.1529 (1991).   However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

to afford or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. <u>Id.</u> at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  <u>E.g.,</u> <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

07-123  Bartley

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions  . . .  or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist.

6

Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

### DISCUSSION

The plaintiff, Anthony Bartley, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of back pathology and borderline intelligence.  (Tr. 22).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Bartley retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 25-8).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 36, eighth grade education, and work experience as a heavy equipment operator could perform any jobs if he were limited to "light" level exertion, and also had the following non-exertional impairments.  (Tr. 487).  He: (1) could occasionally climb, stoop, and crawl; (2) was moderately limited in his ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically-based symptoms and perform at a

consistent pace without an unreasonable number and length of rest periods, and respond appropriately to changes in the work setting; and (3) retained the capacity to understand, remember, and carry out simple instructions, relate adequately in simple work settings, and tolerate the changes and pressures of a routine work setting.  (Id.).  The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies.  (Id.).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

Mr. Bartley alleged disability due to lower back pain due to herniated discs resulting from a September, 2003 motor vehicle accident, nervousness, and a damaged esophagus. (Tr. 71-2).  At the hearing, he also alleged difficulty in seeing (Tr. 462-3), knee problems, difficulty controlling his bowels, and depression (Tr. 469). He claimed that he could not perform any activities except walking around his house, and had been using a cane for two years. (Tr. 467, 472). He was uncomfortable even picking up a gallon of milk.  (Tr. 483).

The medical evidence shows that the plaintiff was involved in a motor vehicle accident in September, 2003, and was also in another accident in February, 2004. (Tr. 159, 194).  Although much objective testing was normal (Tr. 164-7, 185, 187), an MRI of the lumbosacral spine on September 29, 2003 was read as showing a small annular tear at L5-S1 with no herniation or stenosis.  (Tr. 275).  The

8

radiologist also noted facet arthropathy and atrophy of the muscles.  The plaintiff was referred to Dr. Harry Lockstadt, an orthopedic surgeon, who attempted to perform a discectomy in February, 2004 but was unsuccessful for technical reasons. (Tr. 290).  After the plaintiff continued to complain of intractable pain, Dr. Lockstadt obtained another MRI on May 25, 2004 showing loss of disc height, central non-compressive disc bulging, and non-compressive neural foraminal narrowing.  (Tr. 281).  Dr. Lockstadt noted on June 16, 2004 that the plaintiff had "degenerative bulging" and had failed other treatments such as facet injections, epidural injections and pain medication and that he claimed that "absolutely nothing is helping, not even for one hour and not even for a few minutes."  (Tr. 279).  Dr. Lockstadt stated that he was "not sure what to make of this," and ordered a functional capacity evaluation.  If the evaluation showed good function of the muscles, he was willing to go ahead with surgery, but if there was a "strong functional component" the plaintiff would have to learn to deal with his situation.  (Id.).  The functional capacity evaluation was not obtained until February 25, 2005, and showed an ability to work only at the sedentary level.  (Tr. 430).  However, Mr. Bartley passed only 37 percent of his "validity profile" and "demonstrated positive non-organic signs."   (Id.). Therefore, the evaluator concluded that his true functional ability must be left up to "professional conjecture."  (Id.).

Dr. Lockstadt commented at his next office visit that Mr. Bartley was not making any progress, and although imaging studies had confirmed a ruptured disc,

there was "really no evidence of nerve root compression."  (Tr. 429).  He doubted whether the plaintiff would get much better, based on the functional capacity evaluation, a "grade 9" education, having no future plans for his life, and doing very poorly with pain.  (Id.).  He prescribed working out in a gym "every single day" for the next three months despite pain, and then undergoing another functional capacity evaluation.  (Id.).  However, on May 23, 2005, Dr. Lockstadt appeared to conclude that the plaintiff "has no way of getting himself better because of lack of funding," and was at maximum medical improvement.  (Tr. 428).  He was functioning at the sedentary level and, even with surgery, Dr. Lockstadt was not certain if he would return to gainful employment, although this opinion was partly related to limited insight, limited education, and limited skills.  (Id.).  He stated that it was likely that Mr. Bartley would apply for disability.

A subsequent office note dated March 23, 2006 was dictated by a physician's assistant, Jim Farris.  In the meantime, the plaintiff had had another MRI, which showed degenerative disc disease with a "small" posterior central herniation at L5-S1.  (Tr. 399).  The note states that it was now the author's opinion that the plaintiff would not get better with surgical intervention, and the new MRI showed a degenerative disc at the L5-S1 level "with a slight disc bulge."  (Tr. 427).  The author, whether Farris or Lockstadt, stated that he thought the plaintiff was "fully disabled by his pain," and recommended pain management.  (Id.).  He added that "I do feel that he is disabled from employment for multiple reasons," which were

10

07-123  Bartley

listed as chronic lower back pain, depression, and "at the present time I think he is basically unemployable as well." (Id.). The physician's assistant apparently also completed assessment forms limiting the plaintiff to less than sedentary level exertion and less than full-time sitting and standing. (Tr. 416-26).[1]

The ALJ submitted interrogatories to a Medical Expert (ME), Dr. Stanley Askin, an orthopedic surgeon (Tr. 440). Dr. Askin stated that the plaintiff's impairment was degenerative disc disease at L5-S1, which did not meet the requirements of one of the Commissioner's Listings of Impairment. (Tr. 435). Dr. Askin opined that the plaintiff's objective findings were "no different than other persons in the middle years of life," and opined that Mr. Bartley could perform "medium" level work with no non-exertional restrictions. (Tr. 436-9). He commented that more restrictive limitations could be appropriate after an injury such as a car accident, but these would merely be "to limit provocation of back aches to which all middle-aged persons are liable." (Tr. 436). He added that there was "no health reason why unrestricted activity cannot be expected if the affected person were willing." (Id.).

The ALJ stated that he gave little weight to the opinion of Dr. Lockstadt because the MRI showed only slight disc bulging and he had not recommended any

---

[1]The two assessment forms are both dated March 23, 2006, the same date as the office note dictated by Jim Farris. One of the evaluations is clearly signed by Farris (Tr. 423) while the signature on the other form is not legible (Tr. 426).

surgery or more aggressive treatment.  (Tr. 24).  The ALJ did not totally accept Dr. Askin's opinion either, and stated that he would give the plaintiff the benefit of the doubt although he did not find him to be a credible witness. (Tr. 24-5).   The restrictions in the hypothetical question were consistent with those provided by non-examining state agency physicians and psychologists, except for a reduced exertional level in the hypothetical.  (Tr. 315-17, 339-45, 361-2).

While there is evidence that Dr. Lockstadt had recommended surgery and more aggressive treatment at earlier points, the evidence does suggest that he was not currently entertaining these options at the time the highly restrictive functional capacity reports were completed or his remarks about "disability" were made, even assuming for the sake of argument that the opinions were by Lockstadt and not the physician's assistant.  In combination with the relatively mild findings on the most recent MRI, this rationale provides a reasonable basis for discounting the treating physician opinion.[2]  Moreover, the plaintiff does not challenge this conclusion of the ALJ on appeal.  Nor does he challenge the validity of the hypothetical mental restrictions employed, which are reasonably consistent with the conclusions of examining and non-examining psychologists. (Tr. 260-1, 315-16, 336, 361-2).  Nor

---

[2]The court notes that another very good reason for discounting Dr. Lockstadt's opinion is that he appeared to contradict himself at several points, with some of his commentary at least open to the inference that the plaintiff's complaints were out of proportion to the actual findings.  There was also the matter of the plaintiff's apparent lack of cooperation with the functional capacity evaluation.

07-123  Bartley

is there any clear evidence of greater restriction in the treating notes from the Mountain Comprehensive Care Center.  (Tr. 376-88).

The only issue raised by the plaintiff on appeal is that the ALJ was required to recontact Dr. Lockstadt as provided in 20 C.F.R. Sections 404.1512 and 416.912. These sections provide that the Commissioner will recontact a treating source when the evidence received was inadequate to determine whether a claimant is disabled. These sections have no application to the present set of facts, in view of the fact that Dr. Lockstadt provided a large amount of evidence including all of his office notes and clearly gave an opinion that the plaintiff was not capable of full-time work. The ALJ rejected Dr. Lockstadt's opinion because he reasonably felt that it was not supported by sufficient objective medical evidence, a conclusion which the court has concluded is reasonable under the circumstances.  Therefore, no useful purpose would be served by recontacting Dr. Lockstadt for a reiteration of his opinion, and there is no suggestion that he possesses additional objective evidence not already submitted.

The decision will be affirmed.

This the 26th day of March, 2008.



**Signed By:**

**G. Wix Unthank**

**United States Senior Judge**

13